**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CARRIE CARMAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. CJC-25-0129 |
| FRANK BISIGNANO,[1] COMMISSIONER OF SOCIAL SECURITY, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Plaintiff/Claimant Carrie Carman petitions this Court to review the Commissioner of the

Social Security Administration's (the "Commissioner") final decision involving her claim for

disability insurance benefits ("DIB").[2] ECF No. 1 ¶¶ 2, 4. I have considered the record and the

parties' briefs. ECF Nos. 8, 11, 14. No hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For

the reasons that follow, the Court affirms the Commissioner's decision.

**PROCEDURAL BACKGROUND**

On October 24, 2019, Carman filed an application for DIB pursuant to Title II of the

Social Security Act. R. 17. In her application, Carman alleged that she became disabled on

---

[1] The Acting Commissioner of the Social Security Administration has changed during the life of this case, but this only affects the caption. When a public officer is a party to an action and leaves their office, their successor is automatically substituted as a party. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. 405(g). Carman filed this case against Carolyn Colvin on January 14, 2025, when Ms. Colvin was Acting Commissioner of the Social Security Administration. Frank Bisignano became Acting Commissioner on May 7, 2025. As a result, Commissioner Bisignano has been automatically substituted as the Defendant.

[2] Carman also applied for Supplemental Security Income ("SSI"), but it appears from the record that the Commissioner did not determine, either initially or on reconsideration, Carman's SSI eligibility by the time of the ALJ's decision. As a result, the ALJ only considered Carman's DIB application.

August 14, 2014. R. 17. Her claim was denied initially and on reconsideration. R. 130–34; 136–41. Carman requested an Administrative Law Judge ("ALJ") review her claim. R. 143–44. An ALJ held a hearing on September 21, 2023.[3] R. 40–82.

Following the hearing, the ALJ issued an opinion in which he found that Carman was not disabled on or before December 31, 2019, the date last insured, and was therefore not entitled to DIB. R. 17–32. Carman requested review of the ALJ's decision by the Social Security Appeals Council, which denied the request on November 21, 2024. R. 1–5. Carman timely petitioned for judicial review in this Court on January 14, 2025. ECF No. 1.

**THE ALJ'S DECISION**

A claimant is legally disabled under the Social Security Act if they are unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The ALJ must conduct a five-step sequential evaluation to determine if a claimant is disabled. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "For the first four steps, the burden lies with the claimant; at step five, it shifts to the Commissioner." *Thomas v. Berryhill*, 916 F.3d 307, 310 (4th Cir. 2019), *as amended* (Feb. 22, 2019). The ALJ reviews whether the claimant "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock*, 667 F.3d at 472 (citing 20 C.F.R. § 404.1520(a)(4)). Prior to steps four and five, the ALJ must determine a

---

[3] The ALJ first held a hearing on Carman's claim on November 27, 2021; however, the proceeding was postponed to allow Carman's counsel additional time to explore whether Carman's application for SSI could be considered together with her claim for DIB. *See* R. 93–99; *see also supra* Note 2.

claimant's Residual Functional Capacity ("RFC"), which is the most work a claimant can do despite their physical and mental limitations. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 254 (4th Cir. 2017).

The ALJ here conducted the sequential evaluation as follows. At step one, the ALJ found that Carman had not engaged in substantial gainful activity "during the period from her alleged onset date of August 14, 2014, through her date last insured of December 31, 2019." R. 19. At step two, the ALJ determined that Carman had the following severe impairments: "lumbar degenerative disc disease, SI joint osteoarthritis, obesity, tachycardia, Raynaud's syndrome, migraine headaches, orthostatic hypotension, and asthma."[4] R. 20.  At step three, the ALJ determined that, through the date last insured, Carman's impairments did not meet or equal the severity of any of the listed impairments in the Social Security Regulations (the "Regulations"). R. 22 (citing 20 C.F.R. § 404, Subpart P, App'x 1). The ALJ then found that Carman had the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) except no climbing of ladders or scaffolds, crawling, or balancing. Occasional climbing of ramps and stairs, stooping, crouching, and kneeling. Frequent reaching, handling, and fingering. No exposure to hazards, such as unprotected heights, or dangerous machinery. No exposure to atmospheric conditions. Occasional exposure to weather, extreme cold or heat, and humidity and wetness.

R. 25. At step four, the ALJ determined that Carman had been unable to perform past relevant work through the date last insured. R. 30. At step five, the ALJ found that, through the date last insured, and considering Carman's age, education, work experience, and RFC, "there were jobs that existed in significant numbers in the national economy" that Carman could have performed.

---

[4] In a footnote, the ALJ noted "significant medical evidence" after Ms. Carman's date last insured that supports additional diagnoses, including lupus and rheumatoid arthritis. R. 20. The ALJ did not consider this evidence in connection with the disability determination, and it is likewise beyond the scope of my review at this juncture.

R. 31. As a result, the ALJ concluded that Carman was not disabled between the alleged onset date (August 14, 2014) through the date last insured (December 31, 2019). R. 32.

## STANDARD OF REVIEW

The Court will affirm the ALJ's decision if the ALJ's factual findings are "supported by substantial evidence and were reached through application of the correct legal standard." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) (citation omitted); 42 U.S.C. § 405(g). An ALJ's decision satisfies the substantial evidence standard if it contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). In conducting this review, the Court determines "not just 'whether the ALJ examined all relevant evidence' but also whether the ALJ 'offered a sufficient rationale in crediting certain evidence and discrediting other evidence.'" *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025) (citation omitted).

## DISCUSSION

Carman argues that the ALJ erred in two primary ways. First, she contends that the ALJ erroneously assessed her RFC. Second, she argues that the ALJ erroneously evaluated her subjective complaints. Carman raises specific challenges to both the RFC assessment and the analysis of her symptoms. ECF No. 11 at 3–25. The Commissioner counters that substantial evidence supports the RFC assessment and that the ALJ's analysis of Carman's symptoms comports with the law and the applicable Regulations. ECF No. 14 at 5–13. I address each argument in turn, beginning with the RFC assessment.

**I.    The ALJ's RFC Assessment Is Supported by Substantial Evidence.**

Carman raises four discrete issues with the RFC assessment. She contends that the ALJ: (1) failed to adequately address her non-severe mental impairments in the RFC assessment; (2) failed to address her ability to perform work-related activities eight hours per day, five days per week; (3) failed to properly evaluate her obesity and its effect on her other impairments; and (4) failed to set forth a narrative discussion regarding how the evidence supported each conclusion. ECF No. 11 at 3–15. I disagree with each argument and find no error in the RFC assessment.

A claimant's RFC is defined as the most work that a claimant can perform despite the claimant's limitations. 20 C.F.R. § 404.1545(a)(1). To assess a claimant's RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas*, 916 F.3d at 311 (citation omitted). "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Id.* While the ALJ must consider all of a claimant's physical and mental impairments, the ALJ need not discuss every piece of evidence relating to those impairments. *See id.* at 312 ("To be sure, 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision.'" (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014))).

**A.    Non-severe mental impairments**

Carman first argues that the ALJ's decision must be reversed because the ALJ failed to address her non-severe mental impairments in the RFC assessment. ECF No. 11 at 5–7. Carman is incorrect. An ALJ need only *consider* a claimant's non-severe mental impairments in the RFC assessment. Because the ALJ did so here, remand is inappropriate on this ground.

The Regulations require the ALJ to consider "all of [a claimant's] medically determinable impairments . . . including [a claimant's] medically determinable impairments that are not 'severe,'" when making the RFC assessment. 20 C.F.R. § 404.1545(a)(2). With respect to a claimant's mental abilities, the ALJ must "first assess the nature and extent of [a claimant's] mental limitations and restrictions and then determine [a claimant's] residual functional capacity for work activity on a regular and continuing basis." *Id.* § 404.1545(c). A claimant's ability to perform past relevant work, or other work, may be limited by the claimant's capacity to carry out certain mental activities, such as "understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." *Id.* A mental impairment that the ALJ deems non-severe is not to be disregarded. A non-severe impairment might not be enough on its own to limit an individual's ability to perform basic work activities, but when considered with a claimant's other impairments, "it may . . . be critical to the outcome of a claim." SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996).[5]

Here, the ALJ considered Carman's mental impairments as part of the RFC assessment. First, at step two, the ALJ concluded that Carman's mental impairments of depression and anxiety "considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." R. 21. In reaching this conclusion, the ALJ explained that he considered that Carman had only "mild limitations" in the four broad functional areas, known as the "paragraph B" criteria, *see* 20 C.F.R. § 404.1520a(c)(3), and that there was a lack of medical evidence in the record indicating more than a minimal limitation in

---

[5] "Social Security Rulings, or SSRs, are interpretations by the Social Security Administration of the Social Security Act." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 n.9 (4th Cir. 2021) (citation modified), *superseded by regulation on other grounds as stated in Drumgold*, 144 F.4th at 604. "They do not carry the force of law but are binding … on ALJs when they are adjudicating Social Security cases." *Id.* (citation modified).

Carman's ability to do basic work activities. R. 22. The ALJ then specifically stated that the RFC assessment reflected the degree of Carman's mental limitations. R. 21 ("The undersigned considered all of the claimant's medically determinable impairments, including those that are *not severe*, when assessing the claimant's residual functional capacity." (emphasis in original)).

While the RFC assessment does not include discussion specific to Carman's depression or anxiety, that omission is not fatal. As explained above, "[t]he judge is only required to *consider* these non-severe impairments. And even if specifically addressing these impairments was required, [] review is not frustrated by this omission as these impairments were addressed under step two and deemed to be non-severe limitations." *Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) (emphasis in original). Similarly, my review is not frustrated here because the ALJ addressed Carman's mental impairments at step two, deemed them non-severe, and expressly stated that he considered the non-severe impairments in the RFC assessment.

### B.      Sustained work

Next, Carman urges the Court to remand the ALJ's decision on the ground that the ALJ failed to address Carman's ability to perform work-related activities eight hours per day, five days per week, or, in other words, on a sustained basis. ECF No. 11 at 7. Here, too, remand is inappropriate because the ALJ's RFC analysis allows for meaningful review and the ALJ's finding is supported by substantial evidence.

By its very nature, the RFC reflects *the most* that a claimant can do. 20 C.F.R. § 404.1545(a)(1). The RFC assesses "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996). By concluding that Carman had the ability to perform sedentary work with certain

limitations, the RFC "implicitly contained a finding that [Carman] physically is able to work an eight hour day." *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). This finding is not contradicted by the record, and, significantly, Carman does not point to any evidence that she was unable to perform sustained work during the relevant period.

Critically, the most significant evidence in the record regarding Carman's inability to do sustained work *postdates* the relevant period of disability. At the September 2023 hearing, Carman testified about how she suffered "good days and bad days" with her impairments. R. 69. She stated that on bad days she takes longer to get out of bed, or cannot get out of bed altogether. R. 69–70. She explained that she had been having bad days two to three times per week and that she began experiencing these bad days only within the past year and a half to two years, which would have been on or around September 2021.[6] R. 70. The relevant period of disability for Carman's DIB application, however, is between the alleged onset date of August 14, 2014, through the date last insured of December 31, 2019. Notwithstanding this fact, it is apparent from the ALJ's decision that he had taken Carman's testimony into consideration but that it did not warrant any related limitations in the RFC. *See* R. 26 (describing hearing testimony). Indeed, the ALJ acknowledged at several points that evidence postdating Carman's date last insured demonstrated a worsening of her condition but that he could not consider such evidence in his review of Carman's DIB application. *See* R. 20 n.3, 29.[7] Accordingly, the ALJ's finding regarding Carman's ability to do sustained work is supported by substantial evidence.

---

[6] Carman's testimony at the September 2023 hearing regarding the impact of her impairments on her ability to function aligns with the ALJ's observation that the medical evidence after Carman's date last insured supports "a general worsening of her condition." R. 20 n.3. However, as the ALJ noted, he could not consider such evidence to determine whether Carman was eligible for DIB.

[7] The ALJ stated, "[t]he undersigned notes that the record contains significant medical evidence after the date last insured of December 31, 2019, consistent with diagnoses of lupus, rheumatoid arthritis, and a general worsening of condition. However, as stated above, the claimant must

###### C.      Obesity

Carman next argues that the ALJ did not properly evaluate her obesity because the ALJ failed to specifically discuss her obesity in connection with her other impairments. ECF No. 11 at 9–11. A review of the ALJ's decision, however, demonstrates that the ALJ not only analyzed whether Carman's obesity was itself a severe impairment but also considered how her obesity affected her other impairments.

Social Security guidance requires an ALJ to "consider the limiting effects of obesity when assessing a person's RFC." SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). A claimant's obesity may cause limitations relating to exertional functioning, such as "sitting, standing, walking, lifting, carrying, pushing, and pulling" as well as non-exertional functioning, such as "climbing, balancing, stooping, kneeling, crouching, and crawling." *Id.* The effects that obesity has on a claimant, combined with a claimant's other impairments, "may be greater than the effects of each of the impairments considered separately." *Id.*

At step two of the analysis, the ALJ concluded that Carman qualified as obese and that her obesity was a severe impairment. R. 20. The ALJ correctly set forth the requirements of SSR 19-2p by noting that he was required to consider whether Carman's obesity "may have an adverse impact upon co-existing impairments." R. 20. Indeed, the ALJ explained that the combination of Carman's obesity and lumbar degenerative disc disease might cause her "more pain and limitations than might be expected from degenerative disc disease alone." R. 20. The ALJ went on to state that Carman's obesity and related considerations had been "taken into

---

establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. Therefore, I cannot consider the medical evidence of record after December 31, 2019, when determining the claimant's eligibility for Title II disability benefits." R. 29.

account" in his analysis. R. 20. Later in the RFC analysis, the ALJ revisited Carman's obesity impairment, in connection with her other severe impairments, and concluded that the impairments supported an RFC of less than the full range of sedentary work. R. 30.

The ALJ's decision reflects that the ALJ (1) understood and considered the applicable Regulations and guidance regarding Carman's obesity, and (2) further considered the impacts of Carman's obesity and other severe impairments in the overall RFC assessment. In light of this analysis, remand is not appropriate solely because the ALJ's opinion does not contain a more robust discussion of Carman's obesity. *See Kevin F. v. O'Malley*, No. 5:23-CV-00305, 2024 WL 604747, at *8–9 (S.D.W. Va. Jan. 26, 2024), *report and recommendation adopted*, No. 5:23-0305, 2024 WL 580966 (S.D.W. Va. Feb. 13, 2024) (declining to remand ALJ's decision where ALJ "did not provide an exhaustive analysis of Claimant's obesity, [but] showed that the RFC finding accounted for the total limiting effects of Claimant's obesity and other impairments") (collecting cases).

**D.      RFC narrative discussion**

Finally, Carman challenges the adequacy of the ALJ's RFC narrative discussion. Carman argues that the narrative fails to cite specific evidence supporting each of the ALJ's conclusions and that the ALJ did not explain in adequate detail the basis for Carman's sedentary work limitation. ECF No. 1 at 14–15. Carman highlights one concluding paragraph in the ALJ's decision to argue that his analysis was "nothing more than a bald conclusion, devoid of explanation." ECF No. 11 at 14. In doing so, however, Carman ignores the rest of the ALJ's narrative discussion in which he set forth the evidence and connected it to the RFC. *See* R. 25–30.

The Fourth Circuit has declined to adopt "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). Rather, "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The ALJ committed no such error here.

The ALJ first summarized Carman's subjective reports and testimony and explained why Carman's statements concerning the intensity, persistence, and limiting effects of her impairments were inconsistent with other evidence.[8] R. 25–26. The ALJ next summarized the medical evidence, highlighting a wide range of Carman's treatment records and identifying where contradictions existed in the record. *See* R. 27 (contrasting records showing heart palpitations with records showing normal heart rhythm). The ALJ then analyzed the medical opinions and prior administrative findings. R. 29–30. Critically, here, the ALJ explained in detail why he concluded that the assessments of two state medical consultants were only partially persuasive. R. 29. The consultants opined that Carman could perform light work with certain restrictions, but the ALJ reasoned that Carman's impairments limited her to sedentary work with further restrictions. R. 29. The ALJ went on to discuss *specific* records that, in the ALJ's view, warranted the RFC. *See* R. 29–30. The ALJ stated that this evidence "support[ed] the conclusion that while the claimant was more limited than provided for by the State agency as of her date last insured, she was no more limited than provided for in the residual functional capacity assessment defined in FINDING 5 above." R. 30.

---

[8] Carman also challenges this aspect of the ALJ's decision, which I discuss in Section II, below.

The ALJ's RFC analysis was therefore proper. The ALJ described the evidence in the record and built a "logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). Specifically, with respect to Carman's sedentary work limitation, the ALJ explained the necessity of additional restrictions and highlighted seven different medical records that supported the limitations.

> The claimant's symptoms from lumbar degenerative disc disease, SI joint osteoarthritis, obesity, tachycardia, asthma, Raynaud's syndrome, migraine headaches, and orthostatic hypotension, support a reduction to no climbing of ladders or scaffolds, crawling, or balancing; occasional climbing of ramps and stairs, stooping, crouching, and kneeling; frequent reaching, handling, and fingering; no exposure to hazards, such as unprotected heights, or dangerous machinery; no exposure to atmospheric conditions; and occasional exposure to weather, extreme cold or heat, and humidity and wetness. These limitations are consistent with the medical evidence cited in detail in the findings above prior to the claimant's date last insured (*See* Exhibit 3F/3, 6, 10, 19, 23, and 27; Exhibit 4F/3, 6, and 8; Exhibit 5F/4; Exhibit 6F/6-8, 20, 29, 33, 36, and 38; Exhibit 7F/6, 16, and 18; Exhibit 10F/21; and Exhibit 11F/13, 19, and 22-24)

R. 30. Accordingly, remand is not warranted on this ground.

## II.     The ALJ Did Not Erroneously Evaluate Carman's Subjective Complaints.

Carman also argues that the ALJ erred in the following four discrete ways with respect to the evaluation of Carman's symptoms: (1) by erroneously requiring Carman to substantiate her subjective complaints with medical evidence; (2) by failing to adequately address the intensity and persistence of Carman's subjective complaints in the RFC analysis; (3) by failing to identify the specific evidence that the ALJ deemed inconsistent with Carman's statements regarding the intensity and persistence of her symptoms; and (4) by erroneously relying upon Carman's daily activities in the ALJ's evaluation of Carman's subjective complaints. ECF No. 11 at 16–25. Because these issues are interrelated, I address them together.

The Regulations and guidance require an ALJ to conduct a two-step process to evaluate a claimant's subjective complaints. *See* 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304,

12

at *2 (Oct. 25, 2017). At step one, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment[] that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. At step two, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* At step two, the ALJ cannot reject a claimant's symptoms based solely on the objective medical evidence or lack thereof. *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020).

Here, the ALJ determined that Carman's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 26. The ALJ explained that Carman's statements did not comport with her "admitted daily activities and abilities." R. 26. The ALJ pointed to three pieces of evidence to support this finding: (1) an adult function report, in which Carman reported that she "takes care of her pets, she prepares meals, performs light household chores, drives [], goes out alone, shops in stores, reads, plays games, spends time on social media, attends Church, and that she is involved in chorus," R. 26 (citing R. 426–33); (2) a December 3, 2014, treatment record from Kiumarce Kashi, M.D., in which Carman reported walking as a form of exercise, R. 26 (citing R. 557); and (3) Carman's own hearing testimony in which the ALJ noted that Carman testified "that she walks her dog daily, she can walk 100 yards, go to the grocery store, drive a car, attend Church, and that she sings in choir once a week," R. 26.

The ALJ's analysis reflects that he did not rely solely on objective medical evidence to find that Carman's symptoms were inconsistent. Rather, the ALJ relied on Carman's own statements, including those contained in a treatment record and function report. *See* R. 26. The

ALJ committed no error in this regard. *See Owens v. Kijakazi*, No. 22-1273, 2023 WL 2344224, at \*4 (4th Cir. Mar. 3, 2023) (affirming ALJ's decision where ALJ relied on "[claimant's] own testimony regarding her activities and abilities" to find that claimant's complaints were inconsistent with medical record).

Furthermore, Carman's argument that the ALJ did not highlight the specific inconsistencies in the medical record fails because, as explained above, the ALJ referred to specific evidence in his evaluation of Carman's subjective complaints. *See* R. 26.

Carman's argument that the ALJ erred by relying on her daily activities without considering her subjective complaints also fails. As noted above, Carman's September 2023 hearing testimony regarding the intensity and persistence of her symptoms, and the effect these symptoms have on her abilities, postdates the relevant period for disability. The ALJ appropriately excluded evidence of Carman's disability after the date last insured and assessed Carman's RFC based on medical and other evidence during the relevant period of disability. Such evidence included a 2020 adult function report, which describes Carman's abilities and is consistent with the sedentary limitation and other restrictions set out in the RFC. I cannot, as Carman implicitly requests, "'re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment' for the ALJ's." *Drumgold*, 144 F.4th at 605 (citation omitted). The ALJ's conclusion is supported by substantial evidence and will therefore be affirmed.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the Social Security Administration's

judgment is AFFIRMED. The clerk is directed to CLOSE this case. A separate order follows.


Date: March 27, 2026

　　　　　　　　 /s/
　　　　　　　　 Chelsea J. Crawford
　　　　　　　　 United States Magistrate Judge